UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JASMINA TUCOVIC, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:09 CV 148 |
| ) | No. 1:10 CV 386 |
| WAL-MART STORES EAST, LP, *et al.*, ) | |
| Defendants. ) | |

## OPINION and ORDER

This matter is before the court on an unopposed motion for summary judgment filed by defendant Wal-Mart Stores East L.P. (DE # 94.)[1] Before addressing the merits of the motion, the court summarizes the procedural background which brought the case to this point.

### 1. *Procedural Background*

Plaintiff Jasmina Tucovic ("Tucovic") filed this action, *pro se*, alleging her employer, Wal-Mart, discriminated against her on the basis of her national origin and religion. (DE # 1.) As the case progressed, she requested, and was granted, an appointed attorney. (DE # 19; DE # 23.) Counsel then filed an amended complaint. (DE # 40.) In that complaint Tucovic alleged discrimination in violation Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, on the basis of her national origin (and read most broadly, religion), in the form

---

[1] The amended complaint in this action also names Wal-Mart Associates, Inc. as a defendant, but there is no indication an entity by that name has ever been served. In addition, the complaint in 1:10 CV 386 names Wal-Mart Store 4320 [sic] as a defendant. Wal-Mart Stores East L.P. is the only party who has appeared and maintains it is the only proper defendant. The court will refer to the defendant(s) in this case as, simply, "Wal-Mart."

of a hostile work environment, and retaliation for having filed an EEOC complaint and the present suit; and violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), in the form of failing to reinstate her to her prior position after taking FMLA leave and retaliating against her for taking that leave by reducing her work hours. (Id. at ¶¶ 49; 50.)

At the request of the parties, the court then consolidated case 1:10 CV 386 into this action. (DE ## 51; 52.) Tucovic had filed the complaint initiating 1:10 CV 386 *pro se*. In substance her allegations in that suit were the same as those in her amended complaint in 1:09 CV 148, with additional claims of retaliation and a claim that Wal-Mart's actions had violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. A few months later the court granted Wal-Mart's motion to dismiss the Rehabilitation Act claims. (DE # 66.)

No too long after that, the relationship between Tucovic and her appointed attorney deteriorated. She asked for a new attorney, prompting her appointed counsel to move to withdraw. (DE ## 71; 78.) Magistrate Judge Cosbey held a hearing to address the matter (DE # 77), found that there had been an irreconcilable breakdown in the attorney/client relationship, granted counsel's request to withdraw and ordered Tucovic to retain an attorney or she would be deemed to have elected to proceed *pro se*. (DE # 80.) Tucovic then again requested an appointed attorney. (DE # 81.) Magistrate Judge Cosbey then set the case for a scheduling conference, noting that Tucovic's request for appointed counsel was under advisement. (DE # 83.) Tucovic then filed a

2

document stating that she would refuse to attend any conference until her request for an appointed counsel was granted. (DE # 85.)

A week later Magistrate Judge Cosbey held the conference and Tucovic failed to appear. (DE # 86.) The next day he denied her request for appointed counsel requiring her to proceed *pro se*. (DE # 87.) A few months later Wal-Mart moved for summary judgment (DE # 95) and gave Tucovic appropriate notice as required by *Kincaid v. Vail*, 969 F.2d 594 (7th Cir. 1992), *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992) *cert. denied*, 504 U.S. 957 (1992), and *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), of the consequences of failing to respond. (DE # 96.) As noted, Tucovic has not responded. By failing to do so, the properly-supported facts Wal-Mart put forth in its motion will be considered by this court to be undisputed, and the motion will be ruled on in summary fashion. FED. R. CIV. P. 56(c)91)(A), (e)(2); Local Rule 7-1(d)(4).

## 2. Undisputed Facts Summary

Because the court is addressing Wal-Mart's motion in summary fashion, it briefly outlines only the facts essential to ruling on the motion.

Tucovic was born in Bosnia and Herzegovina, but immigrated to the United States in 1993 and has lived here since then, except for a two-year period when she temporarily returned to Bosnia. (DE # 95-2 (Plaintiff's Dep. 61-63) at 5.)[2] In February, 2008, Tucovic applied for a position at a new Wal-Mart store opening in Fort Wayne,

---

[2] Except as indicated otherwise in a particular citation, throughout this opinion citations to page numbers refer to the page number stamped by the CM/ECF system, and not the document's own internal pagination.

Indiana, store no. 4230. (DE # 95-1 at ¶ 11.) In March she was hired as part-time cashier in the store's "Money Center." (*Id*. at ¶ 12.)

At the Money Center, located in the front of the store, customers could do things such as apply for Wal-Mart credit cards, cash checks, buy gift cards, pay bills, etc. (*Id*. at ¶ 13.) In addition to Tucovic there were seven other Money Center cashiers, only three of whom were full-time employees. (Id. at ¶¶ 14; 16.) Tucovic received the same training as every other Money Center cashier. (*Id*. at ¶ 22.) There were additional "front end" employees who worked as cashiers, greeters, at the customer service desk, and clearing carts from the parking lot. (*Id*. at ¶ 16.) Most of these employees were part-time. (*Id*.) All of the front-end employees had to perform each other's jobs as needed, for example, to allow other employees to take a break, or if an additional check-out line needed to be opened because of the number of customers standing in line. (*Id*. at ¶ 19; DE # 95-4 at ¶ 8.) Tucovic was not assigned to perform those other jobs more than any other Money Center cashiers were. (DE # 95-4 at ¶ 13.)

All of the employees' hours fluctuated, but the store managers did not do the scheduling. (DE # 95-1 at ¶ 18; DE # 95-3 at ¶ 5; DE # 95-4 at ¶ 7.) Instead, Wal-Mart uses a software program which creates a schedule, three weeks in advance, based on factors such as expected customer traffic at the store and the employees' reports of the times they are available. (*Id*.; DE # 95-2 (Plaintiff's Dep. 256) at 49.) Managers in the store override the software-generated schedule only if made necessary by, for example,

4

an employee being absent due to illness. (DE # 95-1 at ¶ 18; DE # 95-3 at ¶ 5; DE # 95-4 at ¶ 7.) None of the managers ever overrode Tucovic's hours to reduce them. (*Id.*)

At some point during the first two to three months, a "Customer Service Specialist" (Wal-Mart's term for an hourly-paid supervisor of other hourly employees, usually abbreviated as "CSS") told Tucovic that because she was from Bosnia, she needed to wear deodorant because she was "stinking." (DE # 95-2 (Plaintiff's Dep. 220-22) at 41-2.)

On July 12, 2008, Tucovic received a 90-day evaluation and her overall rating was "meets expectations." (DE # 95-2 at 74.) She received a $.40/hr raise at this time. (DE # 95-4 at ¶ 11.) On March 3, 2009, she received an annual evaluation and again her overall rating was "meets expectations." (DE # 95-2 at 76.) She received another $.40/hr raise at this time. (*Id.*)

In early 2009 a decision was made at Wal-Mart headquarters to close six unprofitable Money Centers and have the Money Center services performed at the customer service desk. (DE # 95-5 at ¶ 3.) Pursuant to this decision, the Money Center in store 4230 where Tucovic worked closed on May 31, 2009. (*Id.*; DE # 95-1 at ¶ 24.) The Money Center cashiers were told they needed to change their "Career Preference" in order to be considered for a new position in the store. (DE # 95-1 at ¶ 25; DE # 95-6 at ¶ 6.) "Career Preference" was, at the time, a Wal-Mart computerized hiring and promotion system. (DE # 95-1 at ¶ 26.) If an employee's preferences matched an open position, the employee would automatically be considered an applicant for that

5

position; but employees were not considered for positions their preferences did not match, even if in the past they had previously expressed interest in that position. (*Id.*)

Two Money Center cashiers immediately changed their career preferences and were hired for open positions at the customer service desk with no change in pay. (*Id.* at ¶ 27.) Two other Money Center cashiers then changed their career preferences, and were hired as cashiers with a slight reduction in pay. (*Id.*) The only career preference Tucovic had listed was "Asset Protection"[3] and she did not change it. (*Id.* at ¶ 28.) There were no Asset Protection positions available. (*Id.*) In addition, there was no longer a Money Center cashier "job code" in the store, which was Tucovic's job code, so the work scheduling software no longer scheduled Tucovic for any hours. (DE # 95-4 at ¶ 17.) Instead, a CSS had to manually override the system to give Tucovic hours filling-in at other front-end positions with no change in pay, even though some of those job positions paid slightly less. (*Id.*) Tucovic did this for only a few days, then started a medical leave of absence. (*Id.*) The leave started four days after the Money Center closed. (DE # 95-1 at ¶ 30.)

Tucovic returned to work on June 21, 2009. (DE # 95-1 at ¶ 19.) When she returned she was reinstated into the same position which, however, was in the inactive job code for Money Center cashier. (*Id.*; DE # 95-1 at 34.) She again had to be manually scheduled to fill-in at other positions. (DE # 95-1 at ¶ 19.) She was again told she needed

---

[3] The affidavit quoted actually uses the term "Asset Prevention." However, it appears that the correct term is "Asset Protection." (DE # 95-2 at 79.) The court will use the latter term.

to change her career preferences, and was informed that cashier positions were available. (DE # 95-2 (Plaintiff's Dep. 240-50) at 45-48.) She did not change her preferences until July 29, 2009, adding "service desk" as a preference, but there were no service desk openings. (DE # 95-1 at ¶ 35.) Tucovic was then given written notice that she could not keep working under the Money Center cashier job code; that there were no available positions matching her career preferences; and that she needed to update her preferences within 15 days. (*Id*. at ¶ 36.) It was recommended she include cashier as a preference. (*Id*.) Despite the warning and recommendation, Tucovic did not update her preferences. (*Id*.)

Because Tucovic, unlike any other employee, stayed in her inactive job code of Money Center cashier for an extended period, it was difficult to manually schedule her to work very many hours, for a number of reasons. (DE # 95-1 at ¶ 41; DE # 95-4 at ¶ 21.) The automatic scheduling software left very few hours available where she could be scheduled to fill in. (DE # 95-4 at ¶ 20.) Tucovic could not be scheduled as a greeter because of a note from her doctor stating that task would aggravate the condition for which she took leave. (*Id*.) On August 29, 2009, she submitted a doctor's note stating she should not be scheduled for work after 8:00 p.m., further limiting times she could be scheduled. (DE # 95-1 at ¶ 38.)

Eventually an asset protection position opened, and Tucovic was scheduled to interview for it on April 9, 2009. (DE # 95-1 at 39.) Tucovic did not show up for the interview. (*Id*.) Then a service desk position opened and Tucovic was scheduled to, and

7

did, interview for the position on June 24, 2010. (Id. at ¶ 40.) The position required working until 11 p.m., however, which conflicted with Tucovic's work restriction. (*Id*.) An employee Wal-Mart believed was better qualified was selected. (*Id*.)

On May 17, 2010, Tucovic received another annual evaluation which again was positive and resulted in her receiving a $.40/hour raise. (DE # 95-2 (Plaintiff's Dep. 193-95) at 36; Ex. 14 at 45-48.)

Plaintiff began another medical leave on July 10, 2010. (DE # 95-1 at ¶ 42.) Her expected return date was July 23, 2010. (*Id*., Ex. G at 43.) She did not return on that date. (DE # 95-1 at ¶ 42.) Wal-Mart policy states that employees who do not return from leave may be deemed to have voluntarily terminated their employment. (*Id*.) Employees may extend their leave, however, by submitting proper documentation including a new request for leave form. (*Id*.) On July 27, 2010, Wal-Mart sent Tucovic a letter stating that her leave had ended on July 23, and warning that if she did not return to work within three days, her employment might end. (Id. at ¶ 43; Ex. I at 46.) Tucovic responded with a letter dated August 5, 2010, stating that she would not return to work until her "problem . . . completely resolved." (DE # 95-1, Ex. I at 49.) She did not provide the proper forms and documentation to extend her leave. (DE # 95-1 at ¶ 44.)

On August 12, 2010, Wal-Mart wrote to Tucovic asking her to submit the proper documentation to extend her leave, and giving her two weeks to do so. (DE # 95-3 at ¶ 14.) She did not respond, and on October 28, 2010, Wal-Mart wrote to her again, giving her an additional seven days to submit the documentation. (*Id*. DE # 95-1 at ¶45.)

8

In a letter dated November 4, 2010, Tucovic responded that she would not return to work. (DE # 95-1 at ¶ 46; Ex. M at 56.) Wal-Mart then considered her to have voluntarily resigned as of November 5, 2010. (DE # 95-1 at ¶ 46.)

*3. Analysis*

RULE 56 of THE FEDERAL RULES OF CIVIL PROCEDURE states that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A summary judgment is required, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (commenting on portions of RULE 56(c) which, on December 1, 2010, were moved to subpart (a)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for

9

summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

To begin, the court notes that the elements and methods of proof for discrimination and retaliation claims brought under Title VII and under 42 U.S.C. § 1981 are essentially identical, so they need not be addressed separately. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 n. 1 (7th Cir. 2012); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).[4]

Wal-Mart has accurately and thoroughly summarized the allegations of Tucovic's consolidated complaints. Instead of attempting to rephrase them again, the court uses Wal-Mart's summary. Tucovic alleges that Wal-Mart discriminated, harassed and/or retaliated against her by:

> (1) making condescending and humiliating comments based on her national origin, including when a CSS [a Wal-Mart term for an hourly supervisor of other employees] allegedly told Plaintiff she needed to use deodorant soap because she was Bosnian and smelled in 2008;
> (2) reassigning her to work as a Cashier and Greeter and "overloading" her with work;
> (3) not giving her breaks on a timely basis;
> (4) subjecting her to longer waits for CSS check approval;
> (5) scheduling her to work during the evening;
> (7) not reassigning her to work in another vacant position, particularly as a Service Desk or Asset Protection Associate, after the Money Center

---

[4] Wal-Mart also argues that § 1981 applies only to claims of race discrimination, not those based on national origin or religion. Tucovic could have a § 1981 claim, however, if she showed that as a Bosnian, she was perceived as belonging to an ethnically distinctive group. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Because the analysis of a § 1981 claim is no different than for Title VII, it is not necessary to resolve this issue.

closed;
(8) allowing another cashier to sign on as her;
(9) reducing her hours after the Money Center closed;
(10) re-assigning Plaintiff to work as a "fill-in" Cashier or Greeter after the Money Center closed;
(11) attempting to "set up" Plaintiff for termination;
(10) [sic] treating Plaintiff as a "new Associate" after taking FMLA leave;
(11) [sic] reducing Plaintiff's hours in retaliation for taking FMLA leave; and
(12) constructively discharging Plaintiff.

(DE # 95 at 17.) (Footnote omitted.) The court also notes that part of the claimed harassment of Tucovic, as Wal-Mart acknowledges and discusses in its memorandum, includes her belief that Wal-Mart was conspiring with customers to make them angry at her in order to harass her.

*a. Harassment/Hostile Environment*

To survive summary judgment on a harassment/hostile environment claim, Tucovic must have sufficient evidence to create a material issue of fact on four elements: 1) her work environment was both objectively and subjectively hostile; 2) her national origin and/or religion was the cause of the hostile conduct; 3) the conduct was severe or pervasive; and 4) there is a basis for employer liability. *Yancick*, 653 F.3d at 544.

As an initial matter, there is simply no evidence to support Tucovic's assertions that Wal-Mart conspired with customers to harass her, so that aspect of her claim need not be considered further.

Next, the comment that an hourly supervisor made to her that she needed to wear deodorant because she was Bosnian and "stinking" also drops out of the equation.

Even assuming this comment alone is severe enough to create a hostile environment, *but see Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) and *Adusumilli v. City of Chicago*, 164 F.3d 353, 356 (7th Cir. 1998), by Tucovic's own account it occurred during the first two or three months of her employment, that is, no later than June, 2008. Her first EEOC discrimination charge was filed with the Fort Wayne Metro Human Relations Commission on September 2, 2009. (DE # 40-1 at 1.) That places the comment outside of the 300-day window for filing a charge of discrimination, and a claim based on it is time-barred. *Jackson v. City of Chicago*, 552 F.3d 619, 624 (7th Cir. 2009).

It is true that the untimely comment could be considered as background evidence on a timely claim, *Id.*, but the remainder of the events that Tucovic complains about simply don't add up to a hostile environment claim. At most she is complaining about the type of day-to-day slights—or events perceived as slights—and disagreements which are common in the workplace. Taken as a whole, they simply do not add up to a work environment which is objectively hostile; neither is there sufficient evidence that the conduct was related to Tucovic's national origin and/or religion. Wal-Mart is entitled to summary judgment on Tucovic's harassment/hostile environment claim.

b. *Disparate Treatment*

Tucovic lacks sufficient evidence to establish disparate treatment on the basis of her national origin and/or religion using the direct method, so the court analyzes her claim using the indirect method established by *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973). To survive summary judgment using this method, there must be sufficient evidence to create a material issue of fact on the following elements of a prima facie case: 1) Tucovic belonged to a protected class; 2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) her employer treated similarly situated individuals who were not in her protected class more favorably.[5] *McDonnell Douglas,* 411 U.S. at 802. If a plaintiff cannot establish a prima facie case, there is no need to move on to the remainder of the *McDonnell Douglas* analysis, that is, requiring the defendant to state a legitimate reason for its actions, and considering whether that reason is a pretext for discrimination. *See Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002) ("If a plaintiff is unable to establish a prima facie case of employment discrimination under *McDonnell Douglas*, an employer may not be subjected to a pretext inquiry"); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177,

---

[5] Wal-Mart addresses Tucovic's claim using these elements, but the prima facie case varies based on the factual circumstances, *McDonnell Douglas,* 411 U.S. at 802 n.13, and the fourth element is often inaccurately phrased. *See Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845-46 (7th Cir. 2007). The treatment of similarly-situated employees is relevant to, and so the fourth element in, traditional reduction-in-force cases, *see, e.g.*, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000); *Oxman v. WLS-TV*, 846 F.2d 448, 453-55 (7th Cir. 1988). In the present case, because there was no adverse employment action, the fourth element is even less clear than is usual. Perhaps the elimination of the Money Center cashier position could be considered a "mini-RIF," but assuming that Tucovic's claim is that she was constructively discharged, the fourth element would be that the position remained available or was filled by someone else. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (fourth element rejected applicant must show is that position remained open and employer continued to seek similar applicants); *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1212 (7th Cir. 1985) (fourth element terminated employee must show is that employer replaced him). Presumably, Wal-Mart continued to hire employees to work at the customer service desk, although this would be relevant to Tucovic's claim only after she changed her career preference so that she might be considered for that position.

1179 (7th Cir. 1997) ("the prima facie case under *McDonnell Douglas* must be established and not merely incanted.")

Tucovic's disparate treatment claim fails for multiple reasons, but because this is a summary ruling the court will give only one: she has no evidence of an adverse employment action. An adverse employment action is one which materially alters terms and conditions of employment, not one which merely causes inconvenience or alters job responsibilities. *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012). Tucovic complains about things like not being assisted promptly enough at times when she needed management assistance (for example, if she needed more cash at the Money Center or approval of a check), being forced at times to work as a greeter or cashier, not having her breaks scheduled when she preferred, and receiving performance evaluations which were not as high as she thought they should have been. These are the types of "day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms and conditions." *Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006). Tucovic never had the material terms of her employment, such as work hours[6] or pay detrimentally

---

[6] Tucovic's hours were changed, at her request, so that she didn't have to work after 8:00 p.m. To the extent her hours were reduced Wal-Mart has established non-discriminatory reasons for that occurring, including not being able to schedule her to work after 8 p.m., but mainly that she had to be manually scheduled to fill-in hours because she did not change her career preference to allow her to be scheduled by the software scheduling system into existing positions. Even if the reduced hours are enough for the adverse action element of her prima facie case, Tucovic has shown no evidence suggesting that the reasons Wal-Mart gives for them are a pretext for discrimination.

changed. In fact, as late as the time of her last annual evaluation she received a pay increase.[7]

To the extent, if any, that Tucovic's disparate treatment claim is based on her resignation amounting to a constructive discharge,[8] for a constructive discharge to have occurred Wal-Mart must have "made the working conditions so intolerable as to force a reasonable employee to leave." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996). Wal-Mart points out that this court has stated that "conditions for constructive discharge must be even more egregious than the high standard for hostile work environment." *Wieland v. Dept. of Transp.*, 98 F. Supp.2d 1010, 1025 (N.D. Ind. 2000) (quoting *Tutman v. WBBM–TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)). Although it is true that the standard is higher, this does not mean that evidence of the conditions amounting to a hostile environment will always be insufficient to show

---

[7] Moreover, to the extent this should be viewed as a reduction-in-force case which eliminated Tucovic's title and position as a Money Center cashier, Wal-Mart has shown that Tucovic was not treated any differently than any other Money Center cashier. For that matter, the undisputed evidence shows that Tucovic was not treated differently than any other Wal-Mart hourly employee in a comparable position; or perhaps that she was treated better, since she was allowed to continue working for a long period of time in an inactive job code, unlike any other employee.

[8] To be clear, undoubtedly Tucovic would argue that she never resigned, but instead was terminated. Her letter of August 5, 2010, saying that she would not return to work until her problem was "completely resolved," also stated that it should not be considered a resignation. (DE # 95-1 at 49.) Wal-Mart had every right, however, when Tucovic did not return from leave and refused to submit documentation justifying additional leave, to follow its policy and deem her conduct a voluntary resignation. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 779-80 (7th Cir. 2012) (employers are entitled to terminate at-will employees who do not return to work after their leave expires). It can be said either that Tucovic, by not returning to work, was not meeting legitimate expectations; or that there is no evidence that reason for her termination is a pretext for discrimination.

constructive discharge. Nevertheless, the undisputed evidence in the present case shows conditions which do not even rise to the level of a hostile environment, and therefore are clearly not so intolerable that a reasonable employee would have found resignation to be the only feasible option. Wal-Mart is entitled to summary judgment on Tucovic's disparate treatment claim.

*c. FMLA – Failure to Reinstate*

Under the FMLA when an employee returns from approved leave, the employer must reinstate the employee to the same, or an equivalent, position. 29 U.S.C. § 2614(a)(1); see *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 977 (7th Cir. 2008). The undisputed facts show that when Tucovic returned from her first leave, she was placed in the same position—albeit, one which no longer existed, but that was because she had not yet changed her career preferences in order to be considered for other positions—at the same rate of pay. Thus, there is no question of fact as to whether Tucovic was reinstated to the same position, and Wal-Mart is entitled to summary judgment on her FMLA claim.

*d. Retaliation*

It appears that Tucovic is alleging retaliation only for having complained about, and pursuing administrative and legal remedies for, discrimination on the basis of her national origin and religion: her complaint filed in 1:10 CV 386 mentions her discharge, but does not state that it was in retaliation for exercising rights under the FMLA.

16

Nevertheless, because the analysis would be the same, the court's ruling should also be understood to apply to such a claim, if Tucovic is making one.

A plaintiff claiming unlawful retaliation can proceed using either the direct, or indirect, method. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012). Under the direct method, a plaintiff must point to evidence showing that she: 1) engaged in a statutorily-protected activity; 2) suffered an adverse employment action; and 3) a causal connection exists between the two events. *See Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (stating elements in context of ADEA claim). In the present case the court, in the absence of a response from Tucovic, fails to discern how she has any direct evidence showing a causal connection between her protected activities and the conduct she complains of. Therefore, it analyzes her claim assuming she proceeds under the indirect method.

Under the indirect method, Tucovic must show evidence creating an issue of fact that: 1) she engaged in a statutorily-protected activity; 2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) she was treated less favorably than similarly-situated employees who did not engage in the protected activity. *Id.*; *Roney v. Illinois Dept. of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007).

Tucovic's evidence of retaliation is the same as her evidence of disparate treatment. For the reasons explained above, that evidence is not sufficient to create an issue of fact as to whether she suffered an adverse employment action, or, to any extent

17

that it is, there is no evidence of pretext. To the extent that her "deemed" resignation should be considered a termination—and therefore an adverse employment action—either she cannot show that she was meeting her employer's legitimate expectations, because she failed to return to work when her leave expired, or she cannot show that using that failure as a reason to terminate her is a pretext for retaliation. *Hunt*, 680 F.3d at 779 ("[b]ecause employers are entitled to terminate at-will employees who do not return to work after their leave expires, it cannot be unlawful retaliation to terminate uniformly any employees because they did not return to work after their leave expired.") Wal-Mart has established that it is entitled to summary judgment on Tucovic's retaliation claim(s).

*4. Conclusion*

For the foregoing reasons, Wal-Mart's motion for summary judgment (DE # 94) is **GRANTED**. The clerk shall enter final judgment in favor of defendants, plaintiff to take nothing by way of her consolidated complaints.

**SO ORDERED.**

Date: March 28, 2013

　　　　　　　　　　　　　　　　　　 s/ James T. Moody　　　　　　　
　　　　　　　　　　　　　　　　　JUDGE JAMES T. MOODY
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT